Filed 9/3/20  In re Leonardo D. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re LEONARDO D., a Person Coming Under the Juvenile Court Law. | B302676 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP06162) |
| Plaintiff and Respondent, | |
| v. | |
| Z.K., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Pete R. Navarro, Judge Pro Tempore.  Affirmed.

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

———————————————

Z.K. (Mother) appeals from the juvenile court's order terminating jurisdiction over her son, Leonardo D. We affirm.

**FACTS**

Daniel D. (Father) and Mother are divorced and share custody of five-year-old Leonardo. Their divorce was acrimonious and they each have a restraining order against the other as a result of domestic violence incidents between them. Their custody exchange of Leonardo takes place at a police station.

On July 18, 2019, Father informed the Los Angeles County Department of Children and Family Services (DCFS) that Mother hit Leonardo in the nose. Leonardo told Father about the incident and the day afterward, when Father saw Leonardo, Father noticed Leonardo's nose was somewhat red and bruised. Father also contacted the police, who went to Mother's home to investigate. When no one answered the door, the officers broke down the door because they observed Leonardo in the window without adult supervision. When the officers interviewed Mother, they smelled alcohol on her breath. Mother denied drinking, but stated she was taking prescription medication.

Mother claimed she accidentally hit Leonardo in the nose while they were playing Jiu Jitsu in the back seat of her friend's car. Leonardo initially confirmed Mother's version of events, because he was interviewed at Mother's home and was afraid she would overhear his statement. However, when the children's social worker interviewed Leonardo at Father's home, he admitted, "she went crazy and it was scary." When urged to describe the incident, Leonardo stated he was at the Santa Monica Pier with Mother and Mother's friend when she "punched" him in the nose in the car. He denied he did anything to provoke her. Leonardo also admitted Mother told him to lie to

2

the social worker about the incident.  He also indicated Mother sometimes "acts crazy" at night, explaining that he sees her swaying, stumbling, and falling off a chair.

Leonardo told the social worker he did not feel safe with Mother because she scares him.  Leonardo's therapist indicated his behavior had regressed since the incident and he was wetting the bed.

The children's social worker scheduled an interview with Mother at her home a few weeks after the incident.  During the interview, Mother appeared intoxicated.  Her breath smelled like alcohol, she spoke incoherently, and her eyes were glassy.  She also lost her balance walking to Leonardo's room.

When the children's social worker interviewed Leonardo in his bedroom, he reported Mother "has been acting crazy" and he believed she drank alcohol.  He admitted he was afraid to stay with Mother.  When the social worker left the bedroom to speak with Mother, she found Mother passed out on the couch.  The social worker called Mother's name three times before she responded.  The social worker indicated Leonardo was not safe staying with Mother.  In response, Mother became aggressive and swung at the social worker.  She yelled, "Fuck you bitch!  You're not taking my kid."  She then stumbled into the bedroom and grabbed Leonardo, making him cry.  Mother told the social worker, "Get the fuck out of my house you fucken [*sic*] bitch!"

The social worker called the police and waited for them outside.  Leonardo ran outside because he did not want to be left behind.  Mother tried to force Leonardo into the home but lost her balance and fell into the bushes.  When a police officer arrived, Leonardo ran to him for help.

On September 20, 2019, DCFS filed a petition pursuant to Welfare and Institutions Code section 300, subdivisions (a) and (b),[1] alleging Mother's substance and alcohol abuse as well as her physical abuse of Leonardo placed him at risk of harm. The petition further alleged Father failed to protect Leonardo from Mother. At the detention hearing, the juvenile court ordered Leonardo removed from Mother's home and placed with Father.

In its jurisdiction/disposition report, DCFS described the events leading to the section 300 petition as set forth above. It also disclosed the family had a prior family maintenance case from December 2016 to July 2018, based on sustained allegations of domestic violence between Mother and Father and of harm to Leonardo resulting from their mutual accusations that each abused Leonardo during their custody dispute. The juvenile court also sustained an allegation that Father engaged in inappropriate sexual grooming practices with Leonardo.[2] In that prior case, Mother and Father were ordered to complete a parenting program, attend domestic violence classes, and participate in therapy. Father was also ordered to participate in counseling to address sexual abuse awareness. The parents complied with the case plan and DCFS recommended the juvenile court terminate jurisdiction with an order for joint custody, which the juvenile court issued on July 10, 2018.

---

[1]     All further section references are to the Welfare and Institutions Code unless otherwise specified.

[2]     That finding was modified on appeal, as is discussed *infra*.

4

The report also disclosed Mother admitted in later interviews that she "lost control" and "can't take care of Leo." She acknowledged she needed to address her substance abuse before she could care for him again. Mother's boyfriend had previously reported to DCFS that Mother was using marijuana and drinking alcohol. When Leonardo was removed from her home, Mother asked her boyfriend for his help with alcohol rehabilitation. He has since helped her attend daily Alcoholics Anonymous (AA) meetings. He also reported she checked into the hospital to detox after the detention hearing.

DCFS recommended the juvenile court terminate jurisdiction and issue a family court order granting sole custody to Father with monitored visitation for Mother. It also recommended any change to the custody order be contingent on Mother successfully completing a substance abuse counseling program and individual counseling. Leonardo's counsel agreed with DCFS's recommendations.

At the jurisdictional and dispositional hearing, the juvenile court sustained the allegations regarding Mother. The petition was amended by interlineation to remove the failure to protect allegations against Father. Mother did not challenge the custody order, but requested the juvenile court retain jurisdiction for six more months to allow the court and DCFS to monitor Leonardo while he was in Father's custody, citing to Father's prior inappropriate sexual conduct.

The juvenile court adopted the recommendations made by DCFS. It terminated jurisdiction over Leonardo, awarded joint legal custody to Mother and Father, awarded sole physical custody to Father, granted Mother four hours of monitored visits per week, and ordered her to complete a drug and alcohol

program, attend AA meetings, and attend individual counseling. The court issued the custody order on November 26, 2019. Mother appealed.

## DISCUSSION

Mother contends the juvenile court abused its discretion when it declined her request to maintain jurisdiction over Leonardo for six months while Father had sole physical custody of him. Mother asserts the prior sustained allegations regarding Father's inappropriate sexual behavior with Leonardo merited continued court supervision, particularly since Father admitted to DCFS that he continued to sleep with Leonardo. We disagree.

Mother provides no authority that requires the juvenile court to maintain jurisdiction over Leonardo based on a family maintenance case that was closed in 2018. In the current proceedings, no allegations have been sustained against Father, much less ones involving inappropriate sexual behavior.

In any event, we review the juvenile court's custody order and order terminating dependency jurisdiction under an abuse of discretion standard and find the court acted within its discretion in this case. (*In re M.R.* (2017) 7 Cal.App.5th 886, 902.)

Mother's assertion that Father's "known sexual grooming techniques" warrant court supervision is unsupported by the record. The record instead discloses the juvenile court previously found Father did not sexually groom Leonardo and did not intend to sexually abuse him.

The original allegation sustained by the juvenile court in 2017 indicated Father "displayed inappropriate sexual boundaries toward [the] child. Such inappropriate sexual boundaries consisted of known sexual abuse grooming techniques including but not limited to acclimating the child to be nude,

6

sleeping nude with the child, exposing his penis to the child, and kissing the child on the lips." Father challenged this jurisdictional finding on appeal.

In an unpublished opinion, we found Father's behavior did not amount to sexual grooming because the juvenile court declined to find Father intended to sexually abuse Leonardo. (*In re Leonardo D.* (Sept. 5, 2018, No. B286154) [nonpub. opn.].) Nevertheless, we found Father's behavior created the risk that Leonardo would engage in sexually inappropriate behaviors and be more vulnerable to pedophiles in the future, particularly if Father continued his behavior as Leonardo aged. (*In re Leonardo, supra,* B286154 at p. 23.) As a result, we removed the reference to sexual grooming and construed the sustained allegation against Father as follows: "On an ongoing basis since May 2016, the child [Leonardo's] father . . . engaged in inappropriate sexual behavior with the child, including but not limited to acclimating the child to be nude, sleeping nude with the child, exposing his penis to the child, excessive kissing of the child on the lips, and placing the child's nude body and penis on the father's chest. Such behavior on the part of the child's father endangers the child's physical and emotional health and safety and places the child at risk of emotional harm or damages and continued inappropriate sexual behavior." (*Id.* at p. 23.) We found substantial evidence supported this allegation and affirmed the juvenile court's findings as modified. (*Id.* at p. 24.) As noted above, this prior family maintenance case was closed in 2018.

The record in these dependency proceedings does not disclose, and Mother does not assert, any continued inappropriate sexual behavior by Father. We acknowledge that Leonardo

7

reported he sleeps with Father and that Father admitted he stays with Leonardo for a few hours until he falls asleep. However, there is no indication there is anything sexual about this conduct; neither report they sleep together in the nude, for example. Given these facts, the juvenile court did not abuse its discretion to decline Mother's request to monitor Father's custody of Leonardo for six months.

We are also unpersuaded that the juvenile court should have continued jurisdiction to provide enhanced services to Mother. By her own admission, Mother had already enrolled in a treatment program and was attending AA meetings by the time of the dispositional hearing. Moreover, the juvenile court ordered Mother to treatment and counseling as part of its exit orders. There was nothing to be gained in the way of further services to Mother by continued jurisdiction under these circumstances.

## DISPOSITION

The juvenile court's order terminating jurisdiction and the custody order dated November 26, 2019 are affirmed.


BIGELOW, P. J.

We Concur:


GRIMES, J.



WILEY, J.

8